STAPLES, J.,
delivered the opinion of the court.
The learned counsel who argued this case have discussed very elaborately the question whether the devise to Anthony Shackelford is to be considered an estate-tail, which, under the laws then in force, was converted into a fee, or whether it is to be considered a fee simple estate, defeasible upon the said Shackelford’s dying ^without issue living at the time of his death. In the view I take of the case, the decision of this question is unnecessary. It appears that George D. Shackelford, the testator, made two codicils to his will — the first of which is withqut date, the second bears date the 35th day of October, 1830. In this second codicil the testator uses the following language: “It is my wish that this (codicil) shall be taken as part of my will. Having another child born since the date of the above, it becomes necessary to provide for the same upon conditions. Let it be distinctly understood that only in this part of my will or codicil is my youngest child, Sarah Iverson Shackelford, embraced or included. I give to my daughter^ Sarah Iverson Shackelford, in the event that my wife, Martha, will be satisfied with what I give her for dower — two negroes named Polly and Buck.” The question arises, Does this codicil amount to a republication of the will? There is some conflict among the authorities upon the proposition, whether a codicil proprio vigore, independently of an expressed or implied intention, operates as a republication, or whether it must appear on the face of the codicil or otherwise it was so intended. It has been settled, however, by a long train of decisions, that no particular words are necessary to constitute a republication. All that is necessary is, that it shall appear that the testator considered the paper as his will at the time he made the codicil. Anything is sufficient which indicates a continuance of the testamentary intent with respect to the disposition of the testator’s property. In Goodtitle v. Meredith, 3 Maulé & Sel. 5, it was held not necessary there should be an actual republication of the will by its being before the testator at the time, and by his declaring that he means to republish it; but if the codicil declares it is to be taken as a part of the will, this constitutes a republication.
*Lord Hardwicke said, in a case before him, he saw no great difference between the words “I desire this codicil may be a part of my will,” and the words “I republish it.” There are cases in which it has been held that the codicil was not such a republication of the will as to pass after-ac-ciuired lands, because it plainly appeared *447 that the devise was not intended to include any other lands than those specifically devised by the will. Kendall’s ex’or et als. v. Kendall. 5 Munf. 272. But where the testator in the codicil refers to the will, and gives sufficient demonstration that when making the codicil he considered the will as his will, there a republication may be implied. And even though the codicil refers to personal estate only, it may operate as a republication as to realty, so as to pass after-acquired lands. See Hulme v. Heygate, 1 Meriv. R. 285; Redfield on Wills, Part I., 369. 70. 71; 3 Rom. Digest, 93-104, where the authorities are collected. In the case before us, the testator declares it to be his wish that the codicil shall be taken as a part of his will, and in other respects recognizes the will as still existing, thus bringing it directly within the influence of the authorities cited. The effect of a republication, according to all the cases, is to bring down the will to the date of the codicil, so that both instruments are to be considered as speaking at the same date a«l taking effect at the same time. It is the same in effect as if the testator had made a new will of the same date with the codicil, and the whole may be controlled and governed by the laws then in force. See authorities already cited.
The testator here having died after 1st of January, 1820, and the codicil having been executed also subsequent to that date, the will is to be governed by the provisions of the statutes then in force. These provisions may be found in the 25th and 26th sections of ^chapter 99, Code of 1819, Vol. I. 369. It is not necessary to quote these statutes here in full. They jn effect declare that every estate in lands, limited by deed made after the 1st of January, 1820, or by a will of a person dying after that date, which would have been an estate-tail as the law stood on the 7th of October, 1776, shall be deemed to be an estate in fee simple, and every limitation upon such an estate shall be valid if the same would be valid when limited upon an estate in fee simple; and further, every contingent limitation in any such deed or will made to depend upon the dying of any person without heirs or heirs of the body, or without children or other descendant or relatives, shall be held and interpreted a limitation to take effect when such person shall die not having such heir, child,' offspring, descendant or other relative living at the time of his death or born to him within ten months thereafter, “unless the intention of such limitation be otherwise expressly and plainly declared on the face of the deed or will creating it.” Now. if it be conceded that the estate devised to Anthony Shackel-ford was an estate-tail under the laws as they existed on the 7th of October, 1776, yet under the operation of the 25th section that estate would be deemed an estate in fee simple, and the limitation upon it in favor of the surviving children of the testator or their issue must be deemed valid, because under that section it is to be held and interpreted a limitation to take effect upon the death of Anthony Shackelford without having a child living at the time of his death or born to him within ten months thereafter — the intention of such limitation not being otherwise-expressed or plainly declared on the face of the will. The result is that upon the death of Anthony Shackelford without issue his interest m the estate cea-sed, the title acquired by the defendant from him also ceased, and the limitation *ira favor of the plaintiffs took effect. The plaintiffs have a title, therefore, to the land in controversy, and may recover the same in the present action.
Under the second assignment of error, it is claimed that whether the devise to Anthony Shackelford creates an estate-tail converted into a fee or a fee simple estate, defeasible upon a failure of issue, in either case, it is such an estate as confers upon the wife of the devisee, Anthony Shackelford, a right of dower in the lands in controversy, according; to. the decisions of this court in Jones & wife v. Hughes, 27 Graft. 560; Medley v. Medley, Ibid. 568; and she having united with her husband in the deed to the defendant, and having survived her husband, the defendant is entitled to hold, if no more, at., least dower interest of Mrs. Shackelford during her life time.
In the cases just cited and relied upon by-defendant, the wife had not relinquished her dower, and having survived her husband, asserted in her own behalf her right of dower. In the case before us, she united with her husband in the deed to the defendant, who seeks in her name to recover or hold the dower relinquished by her. A moment’s reflection will be sufficient to show that the claim cannot be sustained. During the life of the husband the wife has no estate or interest in his lands. She has a mere contingent right of dower which may be the subject of a conveyance or relinquishment under the statute. It may also constitute a valuable consideration for a post-nuptial settlement, because it is in the nature of a contingent lien or incumbrance upon the realty. Beyond this, however, it is not even a right in action. When the wife unites with her husband in conveying the property to a purchaser, the effect is not to vest in the latter the dower interest or any estate separate and distinct from that of the husband. but simply to relinquish a contingent *right in the nature of an encumbrance upon the property conveyed. which, if not so relinquished, will attach and be consummate on the death of the husband. This right being relinquished, is gone forever, the charge upon the estate ceases, and the title of the purchaser becomes complete. The title so acquired is not to two estates or interests, that of the husband and wife, but to one estate, that of the husband, discharged of the wife’s contingent claim of dower. Indeed, the dower is a mere continuation of the husbancfs estate, so that upon his death the freehold immediately descends upon the heir, and the widow has a mere right of action to recover her interest. See Tyler on Cover-ture and Infancy 584, 586.
*448 But .if it be conceded that the effect of the wife’s relinquishment is to vest in the purchaser' a distinct interest capable of being enforced, the concession would not at all help the defendant. The case presented would then be one of the union of the dower estate with that of the fee in one and the same person, and the result would be a merger of the less in the greater estate, and the consequent extinction of the less.
Nemo potest esse dominus et tenens is an universally recognized maxim. There is, says Chancellor Kent, an absolute incompatibility in a person filling at the same time the character of tenant and reversioner in one and the'.same estate. 4 Kent’s Com. 99; 1 Romax Dig. 13.
If, therefore, the defendant acquired the dower interest of the wife, he being the owner of the fee also, the dower estate is merged in the fee, and no longer exists. These considerations are conclusive' against the claim of the defendant to set up in himself a dower interest after the termination of his title as purchaser.
*The third error assigned is to the action of the court admitting certain evidence objected to by the defendant as set out in the second bill of exceptions. The plaintiffs claimed rents and profits from the defendant for the use of the land. The defendant, on his part, claimed compensation for improvements. It seems that the amount so claimed by defendant exceeded the value of the rents and profits to which plaintiffs were entitled for the five years preceding the institution of the suit. And thereupon the plaintiffs were permitted by the court to show and to claim for the use and occupation of the premises from the time of the conveyance of the lands by Anthony Shackelford to the defendant to the time of the death of said Shackelford, to be applied as a set-off against the claim of the defendant for improvements. In this the circuit court plainly erred. The defendant claimed under Anthony Shackelford, and whatever title the latter had was vested in defendant. As already seen, Anthony Shackelford had afee-simple estate defeasible upon his dying without issue, or he had an estate-tail converted into a fee upon which there was a valid limitation. In either case, whether he had issue or not, his title during his life was perfect. He could not be charged with the use and occupation of the premises which he held as owner for life, neither could the defendant as his alienee. It is clear, theret fore, that the circuit court committed an error in admitting the evidence offered by the plaintiffs as set out in the second bill of exceptions. The question now presented is the judgment of the circuit court to be reversed on that ground.
The statute under which these proceedings are had provides that the plaintiff, if judgment is rendered for him, may elect to relinquish his estate in the premises to the defendant at the value ascertained by the jury, and the defendant shall henceforth hold all the estate *the plaintiff may have had, provided he pays to the plaintiff the value so ascertained by the jury in the manner prescribed by the court. Code of 1873, ch. 132, § 13. This section was framed upon the idea that the plaintiff might prefer to surrender the land to the defendant rather than to pay for the defendant’s improvements. If, however, the defendant fails to pay the plaintiff the assessed value of the land, the court may order it tobe sold, and the proceeds of sale to be applied to pay the plaintiff the assessed value, and the surplus, if any, to be paid over to the defendant for his improvements. It seems that in the case before us, after the jury had fixed the value of the land, exclusive of the defendant’s improvements, at the sum of $4,032, and the amount due defendant for improvements at $2,400, the plaintiffs thereupon elected to relinquish their estate in the premises to defendant. Whether the defendant concluded to take the property on these terms does not appear. The court, however, entered an order for the sale of the premises in default of payment by the defendant. It would seem, therefore, that the error of the circuit court, in admitting the evidence already adverted to, was rendered immaterial by the subsequent proceedings. For whether the defendant’s claim for improvements was a hundred or a hundred thousand dollars, the plaintiffs were not personally liable for it, nor could the land itself be held liable until the plaintiffs were paid its assessed value. When, therefore, the plaintiff released the land to the defendant at its assessed value, the defendant could keep it upon paying such value, or allow it to be sold, and take the balance of the proceeds, whatever they were, after paying the plaintiffs such assessed value. The question of the rents and profits became, therefore, wholly immaterial, and the defendant was not and *could not be prejudiced by the admission of the testimony in question.
The next error assigned is the action of the court in allowing the same jury which tried the case on its merits to assess the value of the land ir. controversy, and also to fix the amount of'the rents and profits for which the defendant was liable. This objection is based upon the decision of this court in Goodwyn v. Myers, 16 Gratt. 336, in which it was held that where the defendant claims for improvements, the plaintiff may, under the statute, require, at any time before judgment, that the value of his estate in the premises, without the improvements, shall also be ascertained; but this enquiry must be made by a different jury from that which tried the cause on its merits. A sufficient answer to this objection is found in the conduct of the defendant himself. After the jury had rendered a special verdict on the title, they were detained by the court for the purpose — first, of assessing the value of the defendant’s improvements; second, the value of the premises without such improvements; thirdly, the rents and profits for which defendant was liable. The defendant made no objection to this mode of proceeding. He not only acquiesced in what was done, but he seemingly approved it, for he was repre- *449 sentcd by counsel, and introduced liis testimony upon all these issues. If he was not willing that the same jury should make all the inquiries, good faith required, he should ¡ make his objection known then and there. I Having taken his chances before that jury, i he cannot be heard to say that a different jury ought to have been empanelled to try one of the issues. The defendant had the right to waive the point, and we think he has waived it. Without undertaking, therefore, to say what force there would have been in the objection if made in due time, it was too late first to urge it after the verdict *was rendered and | the court was about to pronounce its ¡ judgment. This disposes of all the errors assigned by the defendant’s counsel. For ! the reasons stated, we think there is no error in the judgment of the circuit court, and the same ought to be affirmed.
Judgment affirmed.